UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ANGEL ROLON                          :
                                     :
        v.                           :        C.A. No. 08-425ML
                                     :
STONEBRIDGE LIFE                     :
INSURANCE COMPANY, f/k/a             :
J.C. PENNEY LIFE INSURANCE           :
COMPANY                              :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

### Background

This is a closed case.  On February 3, 2009, a Dismissal Stipulation was filed which was signed by the pro se Plaintiff and Defendant's counsel.  (Document No. 17).  Chief Judge Lisi entered the Stipulation as an Order of the Court on February 4, 2009.  The stipulation provided that "Plaintiff's Amended Complaint against Defendant is hereby dismissed with prejudice.  No interest or costs to either party."  Id.

On February 6, 2009, Plaintiff delivered a letter to the Court suggesting that he was pressured to settle and asking "does the court have the power and authority to overturn the agreement that I signed and grant me with a hearing."  (Document No. 18).  This letter was docketed and identified as a Motion for Relief from Dismissal Order.  Id.  Defendant responded with an Opposition (Document No. 20) and a Motion for Sanctions (Document No. 19).  On February 23, 2009, Plaintiff filed a "Motion in Support of Rule 60(b-6) and in support of its letter for relief for 'mistake' or

fraud." (Document No. 21). A hearing was held on March 16, 2009. For the reasons that follow, I recommend that Plaintiff's Rule 60 Motion and Defendant's Motion for Sanctions be DENIED.

**Discussion**

This case was the subject of a Rule 16 scheduling conference on November 25, 2008. At the conference, Plaintiff and Defendant's counsel were agreeable to participating in early neutral evaluation of the case with the Court's ADR Administrator. An ADR Referral Order was entered on November 25, 2008 and the early neutral evaluation was held on January 5, 2009.

A settlement was reached, and the parties signed a "Memorialization of Settlement Terms" on January 5, 2009. (Document No. 20 at 15). Plaintiff refused to sign a dismissal stipulation and general release and the settlement was never consummated. Id. at 16-17. Defendant then moved for summary judgment (Document No. 13) and a hearing was held on February 3, 2009.

At my invitation, the Court's ADR Administrator attended the hearing as a spectator and again made his services as a Mediator available to the parties. The parties voluntarily met with him after the Motion Hearing and the parties again agreed to settlement terms. This time, however, the settlement was consummated. Plaintiff signed a Dismissal Stipulation and a General Release witnessed by Linda Rolon. (Document No. 20 at 18, 19-21). In exchange, Defendant's counsel provided a check to Plaintiff for the settlement amount. Id. at 22. At the March 16, 2009 hearing, Plaintiff indicated that he was still in possession of the settlement check and had neither returned it to Defendant's counsel nor cashed it.

Since this case has been dismissed with prejudice pursuant to the parties' Stipulation and Chief Judge Lisi's Order, Plaintiff's "only route to relief from the settlement and underlying [dismissal order] is through application of Federal Rule of Civil Procedure Rule 60(b)." Geo. P.

Reintjes Co., Inc. v. Riley Stoker Corp., 71 F.3d 44, 46 (1st Cir. 1995).  Plaintiff's Rule 60 argument is far from clear.  Plaintiff's initial letter (Document No. 18) does not mention Rule 60 and is primarily focused on the merits of his disability benefit claim.  After receiving Defendant's objection, Plaintiff's second submission (Document No. 21) seeks relief under Rule 60(b)(3) and (6).  "To prevail under Rule 60(b)(3), Plaintiff must prove by clear and convincing evidence that the dismissal was obtained through fraud, misrepresentation, or other misconduct by the adverse party."  Bonneau v. Clifton, 215 F.R.D. 596, 600 (D. Or. 2003).  "Plaintiff cannot obtain relief [under Rule 60(b)(3)] merely because he has had a change of heart."  Id.  Rule 60(b)(6) permits relief for "any other reason justifying relief from the operation of the judgment."  Since this case was closed due to a Stipulation and Dismissal Order, there is no judgment and thus it is questionable whether Rule 60(b)(6) even applies.  In any event, the First Circuit has cautioned that Rule 60(b)(6) motions should be granted "only where exceptional circumstances justifying extraordinary relief exist" and that "the discretionary power granted by Rule 60(b)(6) is not for the purpose of relieving a party from...free, calculated, and deliberate choices made as a part of a strategy of litigation."  Paul Revere Variable Annuity Ins. Co. v. Zang, 248 F.3d 1, 5-6 (1st Cir. 2001) (citations and internal quotes omitted).

Plaintiff's primary argument appears to be that Defendant submitted a "fraudulent Sample Policy that they used as evidence in this case confusing the Honorable Judge."  (Document No. 21 at p. 2).  However, he draws no connection between that allegedly "fraudulent" policy and his decision to settle this case and sign a dismissal stipulation.  The "Sample Policy" is not a new issue.  Defendant identified the policy as "Appendix 2" to its Statement of Undisputed Facts in Support of Motion for Summary Judgment.  (See Document No. 14 at ¶ 2).  The policy is identified as a

"Blanket Catastrophic Accident Insurance Policy," Policy No. 25649 GM 951 dated July 19, 2000. Document No. 14-2 at 5-12.

Plaintiff raises two issues regarding the "Sample Policy." First, the name of the insurer is Stonebridge Life Insurance Company and he asserts that he purchased insurance from J.C. Penney Life Insurance Company not Stonebridge. Second, the "Sample Policy" does not have his name or policy certificate number on it. (Document No. 18 at p. 1). Since the parties settled this case on the day of the hearing on Defendant's Motion for Summary Judgment, the Court never made any determinations regarding the relevance, if any, of these issues. Furthermore, Plaintiff had a copy of the "Sample Policy" when he opposed Defendant's Motion for Summary Judgment and questioned the legality of the apparent sale of his "contract" by J.C. Penney Life to Stonebridge Life. (Document No. 15). Plaintiff also submitted as an Exhibit a Membership Summary which references both HealthExtras, Inc. (the "Group Policyholder" in the "Sample Policy") and Policy GM 951 (the second part of the policy number on the "Sample Policy"). (Document No. 15-2 at pp. 5-6). Thus, Plaintiff knew Defendant was relying in part on the "Sample Policy" and was free, as he did in his opposition to Defendant's Rule 56 Motion, to dispute the applicability of the "Sample Policy" and to continue to litigate his claim. Finally, in his Opposition to the Motion for Summary Judgment, Plaintiff explains that he refused to finalize the first "settlement" because while waiting for the dismissal stipulation to sign he "found another policy that will prove to this Honorable Court that my allegations concerning this case are correct." (Document No. 15 at p. 2).

Plaintiff's second argument appears to be that he was pressured into settling this case and thus deprived of his right to "justice." (Document No. 18 at p. 1). However, Plaintiff has offered no credible basis for this allegation and no evidence to suggest that his "second" decision to settle

this case was other than voluntary.  Plaintiff alleges in his submission that, at the February 3, 2009

hearing, I "confirmed to the Plaintiff that [his] loss of use of [his] hands and arms was approved that

[he] won that part of the case." (Document No. 21 at p. 3) (emphasis added).  At the March 16, 2009

hearing on the instant Motions, Plaintiff told me that those were my "exact words" at the February

3, 2009 hearing.  However, a review of a transcript of such hearing reveals that I made no such

statement and his unsupported assertion calls into question the reliability and credibility of Plaintiff's

contentions as a whole.  In fact, although not obligated to do so, I made clear to Plaintiff what

specific issue was before the Court and the potential outcome(s) as the case proceeded.  I advised

Plaintiff as follows:

> THE COURT:     Well, what the Court will decide ultimately, just
> so you're not misled, the only thing presently before the Court to
> decide is whether or not your claim is timely.  If I find your claim is
> timely, I'll recommend to Judge Lisi that the case proceed.  If I apply
> the law in terms of the policy and I find that you were too late, I'll
> recommend to her that the case get dismissed and that will be it.
> You'll have rights to appeal to either Judge Lisi or to the Court of
> Appeals in Boston, but subject to winning those appeals, your case
> would be over.  You'd get nothing.  If you win on the issue of – if I
> find your claim was timely filed and I allow you to get over that
> hump, then they will ultimately say that your medical issues don't
> constitute loss of use or total paralysis within the meaning of that
> policy, and then the Court will have to decide, and what the Court
> will decide is not whether it's fair that you get 50,000 or a hundred
> thousand, or 10,000, or 200,000.  The Court will decide whether you
> have a covered loss within the meaning of the policy.  If the Court
> finds that you didn't have a covered loss within the meaning of the
> policy, you will get nothing.  Again you'd have rights to appeal, but
> absent that – winning on those appeals you'd get nothing.  If the
> Court finds you had a covered loss, that the medical evidence
> supported that you had total loss of use, total paralysis, whatever the
> wording is under the policy, then you would get a judgment for a
> million dollars, and they would then have to appeal it if they thought
> that the Court was wrong.  I don't want you to be misled that the
> Court is going to make a decision and say, "well, it's not fair, he's

disabled, so he should get a hundred thousand dollars." Either you get it or you don't. You're either entitled to it as a matter of contract or you're not. So it's an all or nothing proposition ultimately.

Although I encouraged <u>both</u> sides to return to mediation, I made clear to Plaintiff that I had made no

decisions either way in this case. In fact, I advised him as follows:

> THE COURT:    All right. I'm required to issue a Report and Recommendation to Chief Judge Lisi, meaning I'll put something in writing to her, and I will recommend to her whether she allow the case to go forward or either I recommend to her granting defendant's motion which would end the case. Once I issue that written report, you will have a very short period of time, ten days, to file an objection to that. If you don't file an objection, you run the risk that Judge Lisi will adopt my recommendation, if it's adverse to you, and you'll lose your rights to challenge it. There are – the first time you appeared before me I referred you to the rules that apply to your case. There are the Federal Rules of Civil Procedure and then there are local rules. Local Rule 72 sets forth the procedure for objecting to my Report and Recommendation. So if I ultimately disagree with you and grant their motion and you want to challenge it before Chief Judge Lisi, you have ten days to do so, and it's very important that you file it on time. If you don't, you may waive your rights to challenge my recommendation. Do you understand that?

> MR. ROLON:    Okay, your Honor.

> THE COURT:    The same applies if Mr. Whitman is unhappy with my recommendation. I'm just advising you specifically not because I've made any decision to go against you because you're not a lawyer and he is, so he should know the rules, and I'm giving you a little leeway by explaining the rules to you.

Finally, I advised <u>both</u> sides that if further mediation did not result in settlement, that "I will review

the arguments made today and the submissions made by both sides, and I will, as I'm required, make

a written Report and Recommendation in the near future to Judge Lisi on the pending Motion for

Summary Judgment."

6

The bottom line is that this case smacks of "buyer's remorse." In other words, Plaintiff agreed to accept Defendant's settlement offer, later changed his mind and now wants the Court to undo his decision for him. Although Plaintiff describes the "Sample Policy" as fraudulent, he has drawn no connection between Defendant's reliance on that "Sample Policy" in support of its Motion for Summary Judgment and his independent decision to settle the case. Further, Plaintiff has not shown that Defendant has engaged in any fraud, misrepresentation or other misconduct in connection with its offer of settlement to him. As to Plaintiff's accusations that he was misled by the Court and/or its ADR Administrator,[1] they are also unsupported and contradicted by the transcript of the February 3, 2009 hearing. Moreover, in his written submissions, Plaintiff plainly misstated what I said to him at the hearing which, at best, reflects a poor recollection of the proceedings and, at worst, an attempt to mislead the Court. Either way, his clear misstatement calls into question the credibility of his allegations regarding the mediation process. Faced with a pending Motion for Summary Judgment, Plaintiff chose to accept a settlement and stipulate to dismissal of this case rather than face an uncertain outcome on the Motion. Litigants, pro se and represented, commonly face the difficult decision of whether to accept an offered settlement or to accept the risks of litigation. Plaintiff has shown no extraordinary circumstances in this case which require that the Court relieve him of his voluntary decision to settle.

---

[1] For instance, Plaintiff contends that the Court's ADR Administrator told him that he "had no other choice but to accept [Defendant's settlement] offer because of that Rule 56. I will get nothing." (Document No. 18 at p. 2). Plaintiff's contention lacks credibility for several reasons. First, the Court's ADR Administrator is not involved in the process of resolving disputed motions in civil cases and would have no knowledge as to how the Court planned to rule on a pending motion. In fact, prior to the second mediation, I had no conversations with the ADR Administrator regarding the likely outcome of Defendant's pending Rule 56 motion. Thus, he would have no basis upon which to comment on the outcome. Second, as noted above, his alleged comments were directly contrary to what I said to both parties at the February 3, 2009 hearing. Finally, although he is pro se, Plaintiff has shown that he is not hesitant to pursue his case and communicate his position to the Court. Plaintiff refused to sign a dismissal stipulation and release after the "first" settlement which plainly evidences that he is aware that the decision to settle is his choice and he is not afraid to exercise that choice.

**Conclusion**

Plaintiff has not established grounds for relief under Rule 60(b) and thus I recommend that his Motion for Relief from Dismissal Order (Document No. 18) be DENIED.  Likewise, Defendant has not shown grounds for sanctioning Plaintiff's attempt to reopen this case and I recommend that its Motion for Sanctions (Document No. 19) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See  United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
May 8, 2009